UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| vs.    : | CR No. 00-133-ML |
| : | |
| TODD J. LASCOLA   : | |

MEMORANDUM AND ORDER

Mary M. Lisi, United States District Judge

This matter is before the Court on Todd LaScola's motion to modify the restitution imposed as part of his criminal sentence in the above case. For the reasons that follow, that motion is denied.

FACTS AND BACKGROUND

LaScola pled guilty to three counts of mail fraud in violation of 18 U.S.C. § 1341; five counts of wire fraud, in violation of 18 U.S.C. § 1343; and one count of embezzlement from an employee benefit plan, in violation of 18 U.S.C. § 664. In May 2001 this Court sentenced LaScola to 96 months imprisonment, followed by three years of supervised release, and ordered Lascola to make restitution of more than $8 million to his victims. See Judgment of Conviction at 5-6 ("Restitution Order"). See also Transcript of Sentencing Hearing conducted on May 22, 2001 ("Sent. Tr.") at 78. The sentence was based in part on the Court's finding that LaScola's victims collectively suffered a loss of more than $8 million.[1]

---

[1] The criminal conduct underlying LaScola's offenses and giving rise to his restitution obligation may be summarized as follows. LaScola, a licensed stockbroker and investment advisor, engaged in various forms of criminal fraudulent conduct to achieve his goal of acquiring as much wealth as he could, as quickly as possible. He owned an investment advisor business, CPI Investment Management, Inc. ("CPI"), and a registered broker/dealer business known as CPA Advisers Network

Lascola appealed, challenging *inter alia* the assessment of the amount of loss. The Court of Appeals rejected these challenges and affirmed the judgment and sentence. See United States v. LaScola, 45 Fed. Appx. 5 (1st Cir. 2002). LaScola thereafter filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255, raising various claims, including a claim that new evidence proved that the calculation of the amount of loss caused by his offenses was incorrect. See Memorandum and Order dated September 13, 2004 ["§ 2255 Mem. & Order"] at 7. This Court denied relief on all claims, ruling in part that the claim concerning the amount of loss was unsupported and in any event had been rejected on direct appeal. Id. at 7-8. The Court of Appeals denied a certificate of appealability. See LaScola v. United States, No. 04-2327 (1st Cir. September 28, 2005).

LaScola then filed the instant motion to modify the restitution imposed as part of his sentence.[2] He requests that this Court amend his Restitution Order to reduce the amount owed or in the alternative, credit his restitution account with the amounts paid to the victims. Lascola

---

("CPA"). Through these two companies, LaScola defrauded a number of clients, some of whom were elderly, of more than $400,000 worth of their life savings. He used this money to support an extravagant lifestyle, to create the appearance of success and to prop up his businesses.

In addition, LaScola invested $6 million of union pension funds entrusted to him in promissory notes issued by a private real estate developer (the "RBG notes"), a type of high-risk investment union trustees had expressly prohibited, and then misrepresented the identity and/or nature of this investment to the trustees. Incident to this investment, LaScola personally received illegal commissions totaling approximately $248,000. When one of those promissory notes went into default and union officials became aware of these investments, they demanded that LaScola arrange to have the union bought out of the investment. To do this, LaScola embezzled cash and funds totaling approximately $6 million from other CPA clients' accounts (in the process borrowing money against principal in those accounts without authorization).

As a result of LaScola's criminal conduct, his CPI and CPA companies failed, and his clients suffered aggregate losses of more than $8 million. Most of these victims were individuals, some of whom lost their life savings. One of the CPA victims was another small pension fund protected by the provisions of ERISA.

[2] LaScola has also filed a motion pursuant to Fed.R.Civ.P. 60(b) for relief from the judgment denying his § 2255 petition. The substance of that motion is identical in many respects to that set forth in the instant motion to modify restitution. See LaScola v. United States, CR No. 03-370-ML (Doc. #25.) That motion is addressed in a separate Memorandum and Order issued this date.

claims that based on Reports filed by the Trustee for the liquidation of CPA and by the Receiver of CPI and CPA (the "Receiver"), his restitution obligation has been fully satisfied. Lascola points out that after amounts owed to the victims listed in the Restitution Order were paid, the Receiver forwarded the excess funds collected to the Trustee in LaScola's personal Chapter 7 bankruptcy proceeding in the U.S. Bankruptcy Court in the District of South Carolina (No. 04-092340-jw). See Receiver's First and Final Report, Exhibit A to LaScola's Supplemental Memorandum of Law, at 7-8.

In its objection to the motion the Government does not dispute that payments have been made to the victims of Lascola's offenses and for administrative expenses, but it contends that this does not warrant modifying the Court's original restitution order imposed at the time of sentencing.

## DISCUSSION

This Court has reviewed all of the papers submitted by LaScola in support of his motion and concludes that there is no need to modify the Restitution Order. LaScola does not contest the inclusion of any of the victims listed therein, or the amounts payable to those victims. Rather, the crux of LaScola's claim is that amounts which have been paid to the victims to date should reduce his restitution obligation.

As the Government points out, under the Mandatory Victims Restitution Act (MVRA),[3] compliance with a restitution order is to be enforced by the Attorney General, pursuant to 18 U.S.C. § 3612(c), and provisions of that Act ensure that victims of criminal offenses are not paid

---

[3] Mandatory Victims Restitution Act of 1996, Title II, Subtitle A of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, codified in relevant part at 18 U.S.C. §§ 3663A, 3664 (1996).

twice for their losses. See 18 U.S.C. § 3612(j). However, even if the victims have been compensated, this does not necessarily "discharge" the Restitution Order. The MVRA also provides that a victim "has received compensation from insurance or any other source with respect to a loss and has otherwise been made whole, the court shall order that restitution be paid to the person who provided or is obligated to provide compensation ... ." 18 U.S.C. § 3664(j)(1) Under this provision, LaScola is obligated to reimburse any insurer or any other third-party source for unreimbursed amounts paid by them to the victims set forth in the Restitution Order.

From the papers submitted, it appears that the principal sources of the funds used to reimburse the victims were insurance proceeds paid by the Securities and Investment Protection Corp. ("SIPC") and proceeds from the RBG notes, purchased by LaScola on behalf of his victims without their consent.[4] It is not clear from the record, however, to what extent the SIPC has been reimbursed for amounts paid to LaScola's victims – or to what extent the victims were paid directly – by proceeds of the RBG Notes or otherwise, so as to enable this Court to determine whether the use of those proceeds can be offset against LaScola's restitution obligation.

Thus, while this Court recognizes that amounts paid from proceeds from the RBG Notes could potentially be credited against his obligation under the Restitution Order, see United States v. Bright, 353 F.3d 1114, 1122-23 (9th Cir.2004) (suggesting that forfeited funds later returned to a victim may warrant a subsequent reduction in restitution owed to the victim), the Court need not address these questions in ruling on the instant motion, particularly where the Government represents that it has not yet made a final accounting of the amounts paid and the recipients and sources of those amounts. Such an accounting should include a determination of the extent to

---

[4] Records of this Court's Clerk's Office show that to date a small amount ($824.64) has been paid directly by LaScola from his prison account. This does not affect the Court's analysis herein.

which LaScola has satisfied his restitution obligation, and should a dispute arise on this issue, either the Government or LaScola may apply to this Court for assistance. Nevertheless, the original Restitution Order itself, which was based on a calculation of loss that was upheld by the Court of Appeals on direct appeal and by this Court in Lascola's § 2255 petition, remains accurate and need not be modified at this juncture.

Finally, to the extent that LaScola contends that the discharge he received in his personal bankruptcy proceeding somehow reduces or discharges his liability for his obligation under the Restitution Order, this claim is spurious. See 11 U.S.C. § 523(a)(13) (a bankruptcy discharge under chapter 7 does not discharge any debt "for any payment of an order of restitution issued under title 18, United States Code").

The Court has reviewed LaScola's other arguments in support of his motion and finds them to be without merit.

## CONCLUSION

In view of the foregoing, the Court hereby ORDERS as follows:

1. To the extent that LaScola's motion to modify the Restitution Order seeks to have this Court amend its original restitution order, it is hereby DENIED;

2. To the extent that LaScola's motion requests that his restitution obligation be credited by amounts paid to victims to date, it is hereby DENIED WITHOUT PREJUDICE to renewal of that request in the event that this Court's assistance is needed as to the administrative determination of whether Lascola's restitution obligations have been satisfied.

3. The Government is instructed to use all efforts to render a full accounting of: (1) all amounts paid to the victims of Lascola's offenses, as set forth in this Court's Restitution Order; (2) all amounts paid by the Receiver, including proceeds of the RBG notes; (3) the recipients and sources of all amounts paid; and (4) the remaining amounts, if any, due to LaScola's victims.

4. LaScola is hereby ordered to cooperate with the Government to the extent necessary as it makes these determinations.

SO ORDERED:

_Mary M. Lisi_
Mary M. Lisi
Chief United States District Judge
June 25, 2007